(Slip Opinion) OCTOBER TERM, 2025 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BOWE *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 24–5438.   Argued October 14, 2025—Decided January 9, 2026

Petitioner Michael S. Bowe is serving a 24-year sentence in federal custody after pleading guilty in 2008 to three offenses: (1) conspiracy to commit Hobbs Act robbery; (2) attempted Hobbs Act robbery; and (3) using a firearm in relation to a "crime of violence" as defined in 18 U. S. C. §924(c)(1)(A). Bowe's §924(c) conviction carried a mandatory 10-year sentence to be served consecutively to his sentence for the robbery offenses. To have been properly convicted under §924(c), at least one of Bowe's other offenses must qualify as a "crime of violence" under one of two definitional clauses in §924(c): the "elements clause," §924(c)(3)(A), or the "residual clause," §924(c)(3)(B). But decisions issued years after Bowe's conviction call into question whether either clause can support his §924(c) conviction. See *United States* v. *Davis*, 588 U. S. 445, 470 (residual clause void for vagueness); *United States* v. *Taylor*, 596 U. S. 845, 860 (attempted Hobbs Act robbery is not a crime of violence under the elements clause).

This case concerns Bowe's efforts to obtain postconviction relief from the mandatory consecutive 10-year sentence imposed under §924(c). A comprehensive statutory scheme governs when and how state and federal prisoners can seek postconviction relief in federal court. See 28 U. S. C. §2254 (state prisoners); §2255 (federal prisoners). Particularly relevant here, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), second or subsequent efforts at obtaining postconviction relief require the prisoner first to seek certification from a court of appeals that the filing meets threshold conditions before a prisoner can proceed in a district court. See §2244 (authorization requests by state prisoners); §2255(h) (successive-motion requests by federal prisoners). While §§2244 and 2255(h) have distinct

requirements, §2255(h) cross-references some of the procedures in §2244 for how a "panel of the appropriate court of appeals" "certifie[s]" a second or successive filing.

Bowe first sought §2255 relief in 2016, arguing that §924(c)'s residual clause was unconstitutional. The District Court denied the motion, reasoning that—regardless of the residual clause's constitutionality—Bowe's §924(c) conviction was proper because attempted Hobbs Act robbery qualified as a "crime of violence" under the elements clause. In 2019, after *Davis*, Bowe sought permission from the Eleventh Circuit under §2255(h) to file a second or successive motion. A three-judge panel found that Bowe had not met §2255(h)'s threshold conditions. Although the panel acknowledged that *Davis* announced a new, retroactive constitutional rule (one of the two statutory gateways for successive motions under §2255(h)(2)), it held that Bowe could not make a prima facie showing that his §924(c) conviction was unconstitutional because then-binding Circuit precedent still treated attempted Hobbs Act robbery as a "crime of violence" under the elements clause. After *Taylor* was decided in 2022, Bowe once again sought authorization under §2255(h), arguing that *Davis* and *Taylor* leave none of his convictions as a valid predicate "crime of violence" under §924(c). A panel dismissed the part of Bowe's request resting on *Davis*, reasoning that the claim had been "presented in a prior application" and that the panel lacked jurisdiction over such old claims under §2244(b)(1). The panel also denied the part of Bowe's request that rested on *Taylor*, concluding that *Taylor* did not announce a new constitutional rule within the meaning of §2255(h)(2). Bowe returned to the Eleventh Circuit several times, seeking authorization to pursue postconviction relief, initial hearing en banc, and reversal of Circuit precedent applying §2244(b)(1)'s old-claim bar to federal prisoners' successive §2255 motions. He also requested certification of the question whether §2244(b)(1) applies to federal prisoners. See §1254(2). Bowe's requests were denied. Bowe eventually filed this petition for certiorari, pointing out a circuit split: Six Circuits apply §2244(b)(1)'s old-claim bar to federal prisoners, while three do not. The Court granted review.

*Held*:

1. The Court has jurisdiction because §2244(b)(3)(E) does not bar this Court's review of a federal prisoner's request to file a second or successive §2255 motion. Pp. 5–19.

(a) Section 2244(b)(3)(E) provides that the denial of authorization "to file a second or successive application" shall not be the subject of a certiorari petition. That provision does not apply to federal prisoners. It is housed within §2244, which imposes several strict requirements that apply only to state prisoners. It also speaks only to a "second or successive application," §2244(b)(3)(E), but unlike state prisoners who

file such "applications," federal prisoners file "motions," see §2255(e). Pp. 5–8.

(b) The Government contends that §2255(h)'s cross-reference to §2244—providing that a successive motion must be "certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" the content requirements in §2255(h)—also imports §2244's certiorari bar. But §2255(h)'s cross-reference, coupled with its context, does not provide the clear indication needed to strip this Court of jurisdiction. Given the broad grant of certiorari jurisdiction to the Court, see §1254(1), Congress must speak clearly if it seeks to impose exceptions to that jurisdiction. In *Castro* v. *United States*, 540 U. S. 375, a case also brought by a federal prisoner, the Court held that §2244(b)(3)(E) posed no bar to its review, explaining that the Government's reading would close the Court's doors to a class of habeas petitioners "without any clear indication" that Congress intended such a result. *Id.*, at 381. The same "clear indication" necessary in *Castro* to strip the Court of jurisdiction is required here: The §2244(b)(3)(E) issue arises in the same context and the Government argues that the very same provision bars the Court's review in this case. This clear indication is not a "magic words" requirement; it simply asks whether text and structure unambiguously show that Congress intended to prevent the Court's exercise of its certiorari jurisdiction. A provision that can reasonably be read more than one way in context is not sufficiently clear.

Section 2255(h)'s cross-reference does not provide the clear indication of intent required to strip the Court of jurisdiction. The language of the cross-reference is both narrow and specific. It says that a second or successive §2255 motion "must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" one of two threshold content requirements. It incorporates only the provisions in §2244 that "provid[e]" for how a "panel of the appropriate court of appeals" "certifie[s]" a second or successive filing and directs that those procedures be used to evaluate whether the filing "contain[s]" the content requirements listed in §2255(h). Section 2244(b)(3)(E) is not one of those provisions, and it has nothing to do with the content requirements in §2255(h).

For these reasons and others, whether §2244(b)(3)(E)'s certiorari bar falls within the scope of §2255(h)'s cross-reference is at most ambiguous. Ambiguous language cannot provide the required clear indication, and the Government's remaining arguments do not supply the necessary clarity that the text lacks. The Government also suggests that it would make little sense to bar certiorari review of authorization decisions concerning state prisoners but not federal ones. That

argument carries little weight when the governing standard requires Congress to speak clearly. Moreover, Congress treated state and federal prisoners differently across AEDPA, with state prisoners often facing far higher hurdles to relief. Allowing further review in this Court is thus consistent with both AEDPA's purposes and practical considerations. Pp. 8–19.

2. Section 2244(b)(1) does not apply to second or successive motions filed under §2255(h) by federal prisoners challenging their convictions or sentences. Pp. 19–25.

(a) The text of §2244(b)(1)'s old-claim bar states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." State prisoners alone file habeas corpus applications under §2254. That specific reference to §2254 was deliberate: Elsewhere in this very section, Congress expressly distinguishes §2254 "applications" from §2255 "motions." §2266(a); see also §§2253(c)(1)(A)–(B) (distinguishing state habeas proceedings from proceedings under §2255). When interpreting statutes, the Court presumes that "differences in language like this convey differences in meaning." *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. 79, 86. By its plain terms, §2244(b)(1)'s old-claim bar applies only to state prisoners. P. 20.

(b) Section 2255(h)'s cross-reference to §2244 does not make §2244(b)(1) applicable to federal prisoners' successive §2255 motions. Amicus contends that §2255(h) incorporates §2244, including §2244(b)(3)(C), which requires a panel to determine that "the application makes a prima facie showing that [it] satisfies the requirements of this subsection." From here, one of the "requirements of . . . subsection" (b) is §2244(b)(1). Accordingly, amicus argues, following this chain of cross-references leads to the conclusion that §2244(b)(1) must apply to federal prisoners. But that position is erroneous under the same reasoning that explains why the Court has jurisdiction. Section 2255(h)'s cross-reference incorporates the procedures in §2244 only as they relate to how a panel certifies a second or successive filing. At bottom, the best textual reading of both §2255(h) and §2244(b) is that, when a federal prisoner moves for authorization, a panel can authorize the filing if the filing makes a prima facie showing that it satisfies one of the two grounds in §2255(h), the "two—and only two—conditions in which a second or successive §2255 motion may proceed." *Jones* v. *Hendrix*, 599 U. S. 465, 477.

The argument that Congress meant for AEDPA to treat second or successive filings by federal and state prisoners the same fails. AEDPA is replete with examples of Congress treating state and federal prisoners differently—including in the context of limitations on second or successive filings. Any concern associated with Congress allowing

Syllabus

old-claim litigation for federal prisoners is overstated given that all claims, even the repeat ones, must meet the "strictly limited" threshold requirements of §2255(h), *Jones*, 599 U. S., at 476, and should they survive that review, they must still conform with the demanding statute of limitations contained in §2255(f), *Dodd* v. *United States*, 545 U. S. 353, 359. Very few claims will satisfy either, let alone both. The Court leaves it to the Eleventh Circuit to determine in the first instance whether Bowe should receive authorization to file a second or successive motion under the correct standard. Pp. 20–25.

Vacated and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KAGAN, KAVANAUGH and JACKSON, JJ., joined. JACKSON, J., filed a concurring opinion. GORSUCH, J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined, and in which BARRETT, J., joined as to Part I.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

———————

No. 24–5438

———————

## MICHAEL BOWE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 9, 2026]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Congress has created a comprehensive scheme to address when and how state and federal prisoners can seek postconviction relief in federal courts. A state prisoner can file an application for a writ of habeas corpus under 28 U. S. C. §2254. A federal prisoner, by contrast, can file a motion to vacate, set aside, or correct a sentence under §2255. Each provision contains its own procedural and substantive requirements that an individual must satisfy.

This case concerns the more complicated situation when a prisoner returns to federal court after a prior attempt for relief has failed. In this situation, Congress has enlisted the courts of appeals to play a gatekeeping role in the consideration of second or successive filings brought by federal and state prisoners. Under this system, before a prisoner can bring such a filing in a district court, a court of appeals must certify that the filing meets certain threshold conditions. Section 2244 governs authorization requests made by state prisoners, and §2255(h), in turn, governs requests made by federal prisoners. The two have distinct requirements, but through a limited cross-reference in §2255(h) to §2244 for how a filing is "certified" by a "panel," Congress

has borrowed certain of the procedures that apply to state prisoners and applies them to federal prisoners too.

This case presents two questions regarding which aspects of §2244 fall within the scope of §2255(h)'s cross-reference. The first is whether §2244(b)(3)(E), which prohibits the "denial of an authorization by a court of appeals to file a second or successive application" from being the "subject of a petition for . . . a writ of certiorari," bars this Court's review of authorization decisions concerning the motions of federal prisoners. If it does, this Court would lack jurisdiction to hear this case. The Court holds that it does not. In the narrow cross-reference to the procedures in §2244, Congress has not clearly indicated that it intended to incorporate §2244(b)(3)(E)'s certiorari bar.

The second question is whether §2244(b)(1), which directs courts to dismiss a claim "presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application," applies to motions filed by federal prisoners. It does not: Section 2244(b)(1), by its express terms, applies only to state prisoners' habeas applications under §2254, not to federal prisoners' motions under §2255.

I

Petitioner Michael S. Bowe is in federal custody. In 2008, he pleaded guilty to three offenses: (1) conspiracy to commit Hobbs Act robbery, 18 U. S. C. §1951(a); (2) attempt to commit Hobbs Act robbery, *ibid.*; and (3) the use, carrying, brandishing, or discharge of a firearm in relation to a crime of violence, §924(c)(1)(A). Bowe received a 24-year sentence; 10 of those years were imposed because of the §924(c) conviction, which carried a mandatory 10-year sentence consecutive to the sentence for the predicate robbery offenses. See §924(c)(1)(D)(ii). Bowe did not appeal.

In the decade since, this Court has issued several decisions that have called Bowe's §924(c) conviction into

question. To appreciate the implications of those decisions, it is important first to understand how §924(c) operates.

Section 924(c) applies if, as relevant here, an individual commits a qualifying "crime of violence" with a firearm. A "crime of violence," in turn, is defined in two ways. Under the "elements clause," it is a "felony" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." §924(c)(3)(A). Under the "residual clause," it is a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." §924(c)(3)(B). For Bowe to have been properly convicted under §924(c)—and thus to have received the accompanying 10-year consecutive sentence—his conviction for either conspiracy or attempt to commit Hobbs Act robbery must qualify as a crime of violence under either the elements or residual clause.

Today, it is likely that neither clause would permissibly support Bowe's §924(c) conviction. In *United States* v. *Davis*, 588 U. S. 445 (2019), this Court held that the residual clause is unconstitutionally vague. *Id.*, at 470. In *United States* v. *Taylor*, 596 U. S. 845 (2022), the Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause. *Id.*, at 860. Eleventh Circuit precedent is also clear that conspiracy to commit Hobbs Act robbery does not satisfy the elements clause. See *Brown* v. *United States*, 942 F. 3d 1069, 1075 (2019) (*per curiam*). If sentenced today, therefore, Bowe likely would not be subject to the 10-year mandatory consecutive sentence that he is now serving.

Nevertheless, the timing of this Court's decisions, coupled with the timing of Bowe's efforts to take advantage of them, have produced procedural complications that have so far prevented relief, leading to this appeal.

Bowe, acting *pro se*, initially sought postconviction relief under §2255 in 2016, before the Court decided *Davis*,

arguing that the residual clause is unconstitutionally vague. A District Court rejected Bowe's claim, in part, because regardless of the residual clause's constitutionality, attempted Hobbs Act robbery qualified as a crime of violence under §924(c)'s elements clause. App. 43.

After *Davis* was decided in 2019, Bowe sought permission from the Eleventh Circuit to file a second or successive motion. See §2255(h). A three-judge panel declined to authorize Bowe's motion. Although the panel acknowledged that *Davis* had announced a new, retroactive rule of constitutional law, which is one of two grounds on which a second or successive motion can proceed, see §2255(h)(2), it held that Bowe could not "make a *prima facie* showing that his §924(c) conviction and sentence [were] unconstitutional" because under then-prevailing Eleventh Circuit precedent, "attempted Hobbs Act robbery" still qualified as a crime of violence under the elements clause, App. 52–54.

Then, after *Taylor* was decided in 2022, Bowe once again sought permission from the Eleventh Circuit to file a second or successive motion. This time, Bowe argued that under *Davis* and *Taylor*, none of his convictions qualified as a predicate "crime of violence." A three-judge panel dismissed the part of Bowe's request that rested on *Davis*, reasoning that because the claim was "presented in a prior application" to file a second or successive motion, the panel lacked jurisdiction over it under §2244(b)(1). App. 59–60. The panel also denied the part of Bowe's request that rested on *Taylor*, concluding that *Taylor* did not announce a new constitutional rule as needed to secure relief under §2255(h)(2). App. 59–60.

Bowe did not stop there. A few months later, he again sought authorization to file a second or successive motion, again relying on *Davis* and *Taylor*. This time, Bowe also moved for initial hearing en banc. As relevant, he asked the Eleventh Circuit to overturn its precedent holding that §2244(b)(1)'s old-claim bar applies to federal prisoners'

successive §2255 motions. In Bowe's view, that bar applies only to state prisoners, not federal prisoners like him. A three-judge panel dismissed Bowe's request for authorization, citing §2244(b)(1), and the Eleventh Circuit denied Bowe's motion for initial hearing en banc.

Bowe then moved for an original writ of habeas corpus in this Court. It was denied. *In re Bowe*, 601 U. S. \_\_\_ (2024). Bowe returned to the Eleventh Circuit, seeking authorization, initial hearing en banc, and certification of the question whether §2244(b)(1) applies to federal prisoners. See §1254(2) (allowing courts of appeals to certify questions of law to the Supreme Court). As before, a three-judge panel dismissed Bowe's request for authorization, relying on §2244(b)(1). The panel also declined to certify the question Bowe requested, and the full Eleventh Circuit denied his motion for initial hearing en banc.

Finally, Bowe filed a petition for a writ of certiorari. The Eleventh Circuit is one of six Circuits that apply §2244(b)(1)'s old-claim bar to federal prisoners. Three Circuits do not.[1] The Court granted certiorari to resolve the issue. See 604 U. S. 1096 (2025).

## II

As a threshold matter, the Government argues that the Court cannot resolve the Circuit split concerning §2244(b)(1)'s old-claim bar because the Court lacks jurisdiction to hear the case under §2244(b)(3)(E). That provision states that the "denial of an authorization by a court of appeals to file a second or successive application . . . shall not be the subject of a petition for . . . a writ of certiorari." See

---

[1] Compare *Winarske* v. *United States*, 913 F. 3d 765 (CA8 2019); *In re Bourgeois*, 902 F. 3d 446 (CA5 2018); *In re Baptiste*, 828 F. 3d 1337 (CA11 2016); *United States* v. *Winkelman*, 746 F. 3d 134 (CA3 2014); *Gallagher* v. *United States*, 711 F. 3d 315 (CA2 2013) (*per curiam*); and *Brannigan* v. *United States*, 249 F. 3d 584 (CA7 2001), with *In re Graham*, 61 F. 4th 433 (CA4 2023); *Jones* v. *United States*, 36 F. 4th 974 (CA9 2022); and *Williams* v. *United States*, 927 F. 3d 427 (CA6 2019).

*Hawaii* v. *Office of Hawaiian Affairs*, 556 U. S. 163, 171 (2009) ("Before turning to the merits, we first must address our jurisdiction"). If Bowe were in state custody, then the Government would be correct. See *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 641 (1998). He is not. Section 2244(b)(3)(E) does not prevent the Court's review because the certiorari bar does not clearly apply to motions filed by federal prisoners like Bowe.

A

In the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "Congress established a 'gatekeeping' mechanism for the consideration of 'second or successive'" filings "in the federal courts." *Id.*, at 641 (quoting *Felker* v. *Turpin*, 518 U. S. 651, 657 (1996)). The associated procedural and substantive requirements are "stringent." *Burton* v. *Stewart*, 549 U. S. 147, 152 (2007) (*per curiam*).

State prisoners looking to file a second or successive application must comply with §2244(b), which provides in relevant part:

"(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

"(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

"(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

"(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

"(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

"(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."

By comparison, a federal prisoner seeking to file a second or successive motion must satisfy §2255(h). *Jones* v. *Hendrix*, 599 U. S. 465, 477–478 (2023). That provision states in full:

"A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

"(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

"(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

Unlike the provisions governing authorization decisions for state prisoners, §2255(h) does not mention this Court's certiorari jurisdiction, let alone purport to limit it. Nor does §2244(b)(3)(E) readily apply to federal prisoners on its face: Section 2244, overall, imposes several strict requirements that apply only to state prisoners with the aim of

facilitating finality,[2] and the certiorari bar in particular speaks to "second or successive applications," which federal prisoners do not file, see §2255(e) (federal prisoners must file "motions" for habeas relief, not applications). Whether the Court has jurisdiction therefore turns on the scope of §2255(h)'s cross-reference to §2244.

In the Government's view, the cross-reference captures all of §§2244(b)(3) and (b)(4), including the certiorari bar in §2244(b)(3)(E). Although the Government is correct that the cross-reference incorporates some of the provisions it identifies, the Government is wrong that it also incorporates the certiorari bar. That is because the cross-reference, coupled with its context, does not provide the clear indication needed to strip this Court of jurisdiction.

## B

### 1

This Court has certiorari jurisdiction over any "[c]as[e] in the courts of appeals . . . upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree." §1254(1). Given that broad grant of jurisdiction, Congress must speak clearly if it seeks to impose exceptions to that jurisdiction.

In *Castro* v. *United States*, 540 U. S. 375 (2003), Castro (a federal prisoner) filed a motion for postconviction relief in Federal District Court. He had previously filed a motion, *pro se*, attacking his conviction, but he had not specifically labeled it as a §2255 motion. The District Court construed Castro's previous filing as his first §2255 motion and the second filing before it as a second §2255 motion. Because

---

[2] See, *e.g.*, 28 U. S. C. §2244(b)(1) ("[a] claim presented in a second or successive habeas corpus application under section 2254"); §2244(b)(2) (same); §2244(c) ("[i]n a habeas corpus proceeding brought in behalf of a person in custody pursuant to the judgment of a State court"); §2244(d)(1) ("application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court"); see also §2244(d)(2) ("application for State post-conviction or other collateral review").

Castro did not receive authorization from the Court of Appeals before filing the second motion, the court dismissed it. The court, however, granted Castro a certificate of appealability as to its determination that the motion was his second one. See §2253(c). The Court of Appeals later affirmed the dismissal.

This Court granted certiorari to address the recharacterization of Castro's first filing. The Court also asked the parties whether §2244(b)(3)(E) barred its review. Like here, the Government argued that it did. In the Government's view, the Court of Appeals had denied Castro authorization when it affirmed the District Court's dismissal, making that "denial" the "subject" of his "petition for . . . certiorari" for the purposes of §2244(b)(3)(E). The Court accepted that characterization of the proceedings below for the sake of argument, yet disagreed that §2244(b)(3)(E) posed a bar to its review. *Castro*, 540 U. S., at 380. That was because the "subject" of Castro's petition was not the denial of authorization, but rather "the lower courts' refusal to recognize that [the] §2255 motion [was] his first, not his second." *Ibid.*[3]

As relevant here, the Court stressed a fatal flaw with the Government's argument. As it explained, "reading the statute as the Government suggest[ed]" to bar jurisdiction in that case "would close our doors to a class of habeas petitioners seeking review without any clear indication that

_____

[3] The Government stresses, and the dissent echoes, that the *Castro* Court "took as a given" that §2244(b)(3)(E) applies to federal prisoners by concluding that it had jurisdiction because the subject of the certiorari petition fell outside of the provision's scope, not because the provision applied to state prisoners alone. Brief for United States 18, 30–31. As the Government elsewhere acknowledges, however, the Court did not address the threshold question whether §2244(b)(3)(E) applies to federal prisoners. *Id.*, at 31 (observing that *Castro* "did not even comment on the issue"). Thus, at most, the Court assumed for the sake of its analysis that §2244(b)(3)(E) applied. That assumption is not a holding to which the Court is now bound.

such was Congress' intent." *Id.*, at 381; cf. *Hertz Corp.* v. *Friend*, 559 U. S. 77, 83–84 (2010) (declining to read "silence or ambiguous language as modifying or limiting [the Court's] pre-existing [certiorari] jurisdiction"). That conclusion was also "difficult to reconcile with the basic principle that 'we read limitations on our jurisdiction to review narrowly.'" *Castro*, 540 U. S., at 381 (quoting *Utah* v. *Evans*, 536 U. S. 452, 463 (2002)).[4]

Because a "clear indication" was necessary in *Castro* to strip the Court of jurisdiction, a "clear indication" is required here: The issue arises in the same context and the Government argues that the very same provision bars the Court's review in this case. This clear indication, importantly, is not a so-called "magic words" requirement. It simply asks whether the text and structure support the unambiguous understanding that Congress intended to prevent this Court's exercise of its certiorari jurisdiction. If a provision can reasonably be read multiple ways given its content and context, it is not sufficiently clear.

The dissent contends that this clear-indication requirement comes from "thin air." *Post*, at 11–16 (opinion of GORSUCH, J.). As just explained, however, it comes from

_____

[4] The dissent's rendition of *Castro* is mistaken. It suggests that the clear-indication requirement was tied to the "troublesome resul[t]" that, under the Government's interpretation, a prisoner could not appeal a panel decision characterizing a filing as his first, not his second, even though the Court had previously allowed the Government to appeal a decision reaching the opposite result. See *Castro*, 540 U. S., at 380; *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 641–642 (1998); see also *post*, at 6–7, 14–15 (opinion of GORSUCH, J.). That was one troubling result of the Government's position, but *Castro* also listed two more troubling results: the "clos[ing of] our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent," and the difficulty in "reconcil[ing]" that outcome "with the basic principle that we 'read limitations on our jurisdiction to review narrowly.'" 540 U. S., at 380–381. The latter two concerns arise here, and thus *Castro* requires a clear indication before we will "close our doors" to this distinct class of prisoners seeking habeas relief.

*Castro* itself. It also draws support from this Court's historical practice of declining to read ambiguous statutes to limit its certiorari jurisdiction, which even the dissent acknowledges. See *post*, at 15–16.

The dissent also argues that this clear-indication requirement must be mistaken because it is not derived from principles of constitutional avoidance. Constitutional avoidance, however, is not the only possible source of a rule like *Castro*'s. This Court also has required Congress to speak clearly in other contexts when Congress wishes to do something that the Constitution allows. For example, the Court will interpret a "procedural requirement as jurisdictional only if Congress 'clearly states' that it is." *Boechler* v. *Commissioner*, 596 U. S. 199, 203 (2022). In that context, "Congress need not 'incant magic words,' but the 'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.'" *Ibid.* (citation omitted). Requiring this showing is driven by the harsh consequences of finding a procedural requirement jurisdictional, even though Congress, of course, maintains the power to impose such consequences. See *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514–516 (2006); *Henderson* v. *Shinseki*, 562 U. S. 428, 434–435 (2011). A similar logic drives the clarity required here, when reading §2255(h) as the Government and the dissent do would "close our doors to a class of habeas petitioners." *Castro*, 540 U. S., at 381.[5]

———————

[5] No one contends that *Boechler* controls this case. But see *post*, at 13–14. The *Boechler* line of cases simply demonstrates that this Court requires clarity in some contexts even absent constitutional concerns, undermining any suggestion that constitutional avoidance is the only permissible source of *Castro*'s rule or other interpretative rules like it. Nor does this line of cases stand alone. See, *e.g.*, *Morrison* v. *National Australia Bank Ltd.*, 561 U. S. 247, 255 (2010) (describing the presumption against extraterritoriality, which requires a "clear indication of an extraterritorial application" for a statute to reach beyond domestic affairs, as

2

Section 2255(h)'s cross-reference does not provide the clear indication required to bar this Court's review. The language of the cross-reference is both narrow and specific. It says that a second or successive §2255 motion "must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" one of two threshold content requirements. (The text of the cross-reference does not end at "'certified as provided in section 2244,'" as the dissent would have it. See *post*, at 5, 8, 10–11.) The cross-reference thus appears to incorporate only the provisions in §2244 that "provid[e]" for how a "panel of the appropriate court of appeals" "certifie[s]" a second or successive filing and directs that those procedures be used to evaluate whether the filing "contain[s]" the content requirements listed in §2255(h). Section 2244(b)(3)(E) is not one of those provisions, and it has nothing to do with the content requirements in §2255(h).

First, the cross-reference speaks to how a "panel" of the court of appeals certifies a filing. But this Court is not "a panel of the appropriate court of appeals," §2255(h), so the cross-reference does not speak to this Court's jurisdiction.

Second, this Court's review (or lack thereof ) is not part of how a panel certifies a second or successive filing. Section 2244(b)(3)(A) identifies that the filing must be certified in the court of appeals before an individual can proceed in the district court. Section 2244(b)(3)(B) requires that a three-judge panel make the certification decision. Section 2244(b)(3)(C) tells the panel that the filing must make a prima facie showing that it satisfies the relevant gatekeeping requirements. Finally, §2244(b)(3)(D) instructs the panel to decide whether to certify a filing within 30 days of receiving the request. These provisions all describe the

―――――――
reflecting "a canon of construction, . . . rather than a limit upon Congress's power to legislate").

procedures that a panel must follow in certifying a second or successive filing, and are therefore incorporated by §2255(h)'s cross-reference.

In stark contrast, the certiorari bar in §2244(b)(3)(E) says nothing about how the §2255 motion must be certified. It instead speaks to what happens after a panel has acted on a certification request: specifically, whether an individual can appeal the panel's certification decision. If the certiorari bar did not exist, no aspect of how the panel certifies a filing would change.[6] Put simply, "the certiorari bar addresses an entirely different act (filing a certiorari petition, not certifying a successive motion) by an entirely different actor (the prisoner, not the panel) in an entirely different court (this Court, not the court of appeals)." Brief for Petitioner 33. If Congress intended §2255(h) to incorporate this postcertification orange alongside all the panel-certification apples in §2244(b)(3), it did not say so clearly.

Of course, as the Government and the dissent point out, barring appeals of certification decisions has an effect on the panel's decision by making it conclusive. Brief for United States 47; *post*, at 9–10. That effect, however, has little to do with how the "motion [is] certified . . . by a panel." §2255(h). Section 2255(h)'s reference to how the "motion must be certified" under §2244 thus does not incorporate §2244(b)(3)(E)'s postcertification bar in the clear manner that *Castro* requires.

Contrary to the dissent's framing, *Hohn* v. *United States*, 524 U. S. 236 (1998), does not support a different conclusion. That case concerned whether the Court had jurisdiction over a decision by a three-judge panel to deny a prisoner a certificate of appealability under §2253(c), and held that the Court does have such jurisdiction. *Id.*, at 253.

—————————
[6] The dissent asks "[w]hat would be the point" of subparagraph (B) without the certiorari bar in subparagraph (E). *Post*, at 9. The point of (B) is still apparent. It identifies who makes the authorization determination in the first instance: a "three-judge panel of the court of appeals."

Section 2253(c) applies to federal and state prisoners and dictates that, before an individual can appeal from a district court's denial of a habeas petition, he must secure permission from "a circuit justice or judge."

Court-appointed *amicus* in *Hohn* argued that the decision denying permission was not a "case" in the Court of Appeals for the purposes of this Court's jurisdiction under §1254(1). The Court rejected that construction, however, in part because it would have rendered §2244(b)(3)(E) (which the Court suggested was a requirement for "state prisoners filing second or successive habeas applications under §2254") as superfluous. See 524 U. S., at 249. That was because all the reasons *amicus* gave for why a decision denying a certificate of appealability did not constitute a "case" for the purposes of §1254(1) would equally have applied to a decision denying authorization to bring a second or successive filing. *Ibid.* The Court nowhere held that §2244(b)(3)(E) applied to federal prisoners. (That is not surprising because the case did not present that question.) Nor does the Court's holding today render §2244(b)(3)(E) superfluous: As all agree, it bars this Court's review of panel authorization decisions concerning motions to file second or successive applications by state prisoners.

The dissent also relies on *Hohn* to argue that it already stands for the proposition that §2244(B)(3)(E) imposes "a 'clear limit' on our jurisdiction" in this case. *Post*, at 7, 11–12; see also *post*, at 15. Not so. No one disputes that the certiorari bar clearly deprives the Court of jurisdiction over classes of cases to which it applies. See *Hohn*, 524 U. S., at 250. What is not clear is whether, through the cross-reference in §2255(h), Congress intended for that bar to extend to federal prisoners—a point *Hohn* simply did not address.

## B

For these reasons, whether §2244(b)(3)(E)'s certiorari bar falls within the scope of §2255(h)'s cross-reference is at

most ambiguous. Ambiguous language, however, cannot provide the required clear indication, and the Government's and the dissent's remaining arguments do not supply the necessary clarity that the text lacks.

To begin, the Government contends that there is textual support in §2244(b)(3)(E) for the understanding that the certiorari bar applies to federal prisoners through the cross-reference. On this score, the Government points to how §§2244(b)(3)(A)–(E) each use the term "second or successive application" instead of referring to §2254 specifically or state prisoners more generally. This stands in contrast to nearly all the other provisions in §2244. In the Government's view, this textual variation means that Congress intended for §2255(h)'s cross-reference to incorporate any provision in §2244 that uses the term "second or successive application" and the breadth of the cross-reference therefore must be understood on those terms.

If that were so, §2255(h)'s cross-reference would also incorporate §2244(b)(4). That provision directs district courts to review and "dismiss any claim presented in a second or successive application that the court of appeals has authorized . . . unless the applicant shows that the claim satisfies the requirements of" §2244. Put differently, once a second or successive application is certified, §2244(b)(4) tells a district court to doublecheck that the application satisfies §2244, including its gatekeeping requirements. Section 2244(b)(4), however, plainly falls outside the scope of §2255(h)'s cross-reference because §2244(b)(4) has nothing to do with how a filing is "certified as provided in section 2244 by a panel of the appropriate court of appeals." §2255(h). Thus, accepting the Government's argument that §2255(h)'s cross-reference should be understood to incorporate any provision in §2244 that uses "second or successive application" would essentially require interpreting §2255(h) to mean a federal prisoner's second or successive motion "must conform to all provisions in section 2244 that

are not expressly limited to state prisoners." That, of
course, is not what §2255(h) says.

The Government also points to part of §2244(b)(3)(E) that
does speak to a "panel" of "a court of appeals." Specifically,
§2244(b)(3)(E) says that an authorization decision "shall
not be the subject of a petition for rehearing," thereby bar-
ring panel rehearing. According to the Government, be-
cause §2244(b)(3)(E) speaks to the panel in some regard,
§2255(h) must have intended to incorporate that provision
in its entirety. The Government is wrong, however, that
the certiorari bar is incorporated in this way. Whether
§2244(b)(3)(E)'s panel-rehearing bar applies to federal pris-
oners says little, and certainly nothing clear, about whether
Congress intended §2244(b)(3)(E)'s separate certiorari bar
to extend to authorization decisions concerning federal pris-
oners. Using the former to incorporate the latter is the kind
of jurisdiction stripping by implication that cannot suffice.
Cf. *Felker*, 518 U. S., at 660 ("Repeals [of jurisdiction] by
implication are not favored").

Next, the Government and the dissent argue that allow-
ing appeals from a panel's certification decision to this
Court is inconsistent with §2244(b)(3)(D). *Post*, at 20; Brief
for United States 27–28. That provision, which all agree is
covered by §2255(h)'s cross-reference, imposes a 30-day
clock on a panel's certification decision after a litigant seeks
authorization (though most Courts of Appeals view that re-
quirement as advisory, see *In re Williams*, 898 F. 3d 1098,
1102, n. 5 (CA11 2018) (Wilson, J., specially concurring)
(collecting cases); see also *infra*, at 23–24, and n. 8). When
an individual seeks certiorari, on the other hand, he has 90
days from the date of decision to file a petition in this Court.
This Court's Rule 13.1. The Government suggests that the
30-day limit for panel review indicates that Congress
wanted the certification decision to occur quickly, and that
allowing prisoners to seek certiorari for an additional 90

days after the panel review concludes would thwart that intention.

The Government's argument is misguided. Nothing about the Court's decision today undermines §2244(b)(3)(D)'s timeline for the panel's authorization decision. Nor is this inference so compelling as to provide the needed clarity to cut off the Court's jurisdiction: It is entirely plausible that Congress intended to require panels to move quickly, while still preserving the prisoner's ability to seek further review in the rare case that warrants this Court's attention. See §2266 (placing time limits on the initial review of capital cases in the lower courts but placing no limits on this Court's review). Panels will still have the tools needed, moreover, to facilitate that quick review under the Court's interpretation of §2255(h)'s cross-reference. See *infra*, at 23–24, and n. 8.[7]

From here, the Government resorts to another structural argument. The certiorari bar is found in §2244(b)(3)'s fifth subparagraph. Everyone agrees that §2255(h)'s cross-reference incorporates the preceding four subparagraphs. The Government maintains that it would be odd that Congress intended to incorporate four of those subparagraphs and not all five. Brief for United States 17, 23. If Congress had intended for all five to travel together, however, it did not say so explicitly. That would have been easy to do: Congress simply could have referenced §2244(b)(3) specifically, rather than broadly referencing §2244 with a narrow cross-reference only specifying how a second or successive filing is "certified" by a "panel." Congress did not. The language

---

[7] Nor does the Court's decision today risk unduly opening the floodgates to frivolous appeals from authorization decisions concerning federal prisoners. Such appeals will be governed by the ordinary rules that prevent abuses of the Court's certiorari docket in every other circumstance. See, *e.g.*, this Court's Rules 39.8, 42.2. If Congress thought it best to strip the Court of jurisdiction to keep these appeals away from the Court's docket nonetheless, it failed to convey that intent sufficiently.

it used instead supports the understanding that the provisions the cross-reference incorporates turn on their substance, not where they sit in a list. As explained, *supra*, at 12–14, the certiorari bar does not clearly fall within the scope of the cross-reference on its own terms.

Finally, the Government invokes a practical concern. The Government suggests that it would make little sense to bar certiorari review of authorization decisions concerning state prisoners but not federal ones. That argument carries little weight when the governing standard requires Congress to speak clearly. It also misses the mark. Congress treated state and federal prisoners differently across AEDPA, with state prisoners often facing far higher hurdles to relief. To name a few examples: The statutory requirements for second or successive filings for federal and state prisoners are "not identical." *Gonzalez* v. *Crosby*, 545 U. S. 524, 529, n. 3 (2005); compare §§2244(b)(1)–(2) with §§2255(h)(1)–(2). Indeed, the requirements for federal prisoners are more lenient, as explained in detail below. See *infra*, at 21–22. Further, for state prisoners alone, Congress requires exhaustion, §§2254(b)–(c), and then, once in federal court, mandates deference to both the state court's application of federal law and its factual determinations, §2254(d).

This differential treatment exists for good reason. Congress enacted AEDPA "to further the principles of comity, finality, and federalism." *Williams* v. *Taylor*, 529 U. S. 362, 436 (2000). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt* v. *Titlow*, 571 U. S. 12, 19 (2013). Out of respect for state courts and their ability "to adjudicate claims of constitutional wrong, AEDPA erect[ed] a formidable barrier to federal habeas relief for [state] prisoners." *Ibid.* Federal courts "will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief

is the remedy." *Id.*, at 20; see also *Greene* v. *Fisher*, 565 U. S. 34, 38 (2011) (observing that "the purpose of AEDPA is to ensure that federal habeas" review of state-court proceedings does not function as a "means of error correction").

Comity and federalism, however, fall away when a federal court reviews a federal judgment. By the time a federal prisoner looks to file a second or successive motion, moreover, he will have had fewer bites at the apple, and fewer courts reviewing his case, than most state prisoners in the same position. See §2254(b)(1)(A); *In re Graham*, 61 F. 4th 433, 441 (CA4 2023). Although the Federal Government has an interest in finality too, *Mayle* v. *Felix*, 545 U. S. 644, 662 (2005), "'[n]o legislation pursues its purposes at all costs,'" *Mohamad* v. *Palestinian Authority*, 566 U. S. 449, 460 (2012). Allowing further review in this Court is thus consistent with both AEDPA's purposes and practical considerations.

At bottom, the Government's arguments suggest that §2255(h)'s cross-reference might include §2244(b)(3)(E)'s certiorari bar. They do not, however, provide the necessary "clear indication" that Congress intended to "close our doors to a class of habeas petitioners seeking review." *Castro*, 540 U. S., at 381. Absent such clear indication, federal prisoners are not prohibited from seeking certiorari from a panel's denial of authorization to file a second or successive motion.

## III

Turning now to the merits upon which the Court granted certiorari, Bowe and the Government agree that the Eleventh Circuit erred by applying §2244(b)(1) to Bowe's request for authorization to file a second or successive motion to vacate under §2255(h). The Court appointed Kasdin M. Mitchell as *amicus curiae* to argue in support of the Eleventh Circuit's position. 604 U. S. \_\_\_ (2025). She has ably discharged her responsibilities. The Court nevertheless agrees with the parties and holds that §2244(b)(1) does not

apply to motions filed by federal prisoners under §2255(h).
The contrary decision of the Eleventh Circuit is reversed.

A

Begin with the text.  Section 2244(b)(1) states that "[a]
claim presented in a second or successive habeas corpus ap-
plication under section 2254 that was presented in a prior
application shall be dismissed."  State prisoners alone file
habeas corpus applications under §2254.  See §2254(a) (not-
ing that §2254 is limited to "a person in custody pursuant
to the judgment of a State court"); see also *Magwood* v. *Pat-
terson*, 561 U. S. 320, 333 (2010) ("The requirement of cus-
tody *pursuant to a state court-judgment* distinguishes §2254
from other statutory provisions authorizing relief from con-
stitutional violations—such as §2255, which allows chal-
lenges to the judgments of federal courts").

This specific reference to §2254 was deliberate: Else-
where in this very section, §2244 acknowledges §2255.  See
§2244(a) (referencing §2255); see also §§2253(c)(1)(A)–(B)
(distinguishing a "final order" in a "habeas corpus proceed-
ing in which the detention complained of arises out of pro-
cess issued by a State court" from one "in a proceeding un-
der section 2255"); §2266(a) (distinguishing an "application
under section 2254" from a "motion under section 2255").  A
cardinal rule of statutory interpretation teaches that "when
we're engaged in the business of interpreting statutes[,] we
presume differences in language like this convey differ-
ences in meaning." *Henson* v. *Santander Consumer USA
Inc.*, 582 U. S. 79, 86 (2017).  Thus, by its plain terms,
§2244(b)(1)'s old-claim bar applies only to state prisoners.

Nor does §2255(h)'s cross-reference to §2244 otherwise
make §2244(b)(1) applicable to second or successive motions
filed by federal prisoners.  *Amicus*, as well as the dissent,
however, argues that it does.  As they see it, §2255(h) incor-
porates  §2244,  including  §2244(b)(3)(C).    Section
2244(b)(3)(C), in turn, requires a panel to determine that

"the application makes a prima facie showing that [it] satisfies the requirements of this subsection." From here, one of the "requirements of . . . subsection" (b) is §2244(b)(1). Following this chain of cross-references where it leads, *amicus* and the dissent say, §2244(b)(1) must apply to federal prisoners.

The reasoning why this Court has jurisdiction also shows the error in this position. See *supra*, at 12–14. Section 2255(h)'s cross-reference incorporates the procedures in §2244 only as they relate to how a panel certifies a second or successive filing. It then tells the panel to use those procedures to evaluate whether the federal prisoner's second or successive motion "contain[s]" either newly discovered evidence, §2255(h)(1), or a new rule of constitutional law, §2255(h)(2). Nothing in §2255(h) suggests that it incorporates §2244 for any other purposes. Thus, by its terms, §2255(h)'s cross-reference does not incorporate the content requirements contained in §2244, like §2244(b)(1)'s old-claim bar.

*Amicus* and the dissent's broad reading of §2244(b)(3)(C) would also put §2255 on a collision course with §2244. Section 2244(b) imposes two limitations on the content of a second or successive habeas application: §2244(b)(1), which bars old claims; and §2244(b)(2), which prescribes "two grounds" in which a claim "not previously raised" can proceed in a "second or successive application." *Burton*, 549 U. S., at 153. Section 2244(b)(3)(C), on which *amicus* relies, requires individuals to satisfy all the "requirements of this subsection," including both §§2244(b)(1) and (b)(2). The upshot of *amicus*'s argument would therefore be that §2255(h) incorporates not only §2244(b)(1)'s old-claim bar, but also §2244(b)(2)'s substantive gatekeeping requirements for new claims. Section 2255(h), however, contains its own substantive requirements that are irreconcilable with those in §2244(b).

In particular, §2255(h)(1) permits a second or successive §2255 motion if the petitioner identifies "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." Section 2244(b)(2)(B) also concerns claims based on new facts, but it is more limited than §2255's in two ways. First, it confines the new-facts exception to scenarios in which the new facts "could not have been discovered previously through the exercise of due diligence." §2244(b)(2)(B)(i). Second, it requires that the movant show "by clear and convincing evidence that, *but for constitutional error*, no reasonable factfinder would have found the applicant guilty of the underlying offense." §2244(b)(2)(B)(ii) (emphasis added).

If Congress had incorporated §2244(b)(2)(B)'s more stringent exception into §2255(h), then §2255(h)(1)'s more lenient exception would become a dead letter. Because "'Congress presumably does not enact useless laws,'" *Garland* v. *Cargill*, 602 U. S. 406, 427 (2024), it makes no sense to read §2255(h)'s cross-reference in this way.

Recognizing the problem with this position, *amicus* and the dissent attempt to limit the scope of "requirements of this subsection" in §2244(B)(3)(C) to capture only those content requirements in §§2244(b)(1) and (b)(2) that do not conflict with §2255(h). In their view, Congress intended for the substantive gatekeeping requirements in §2244(b) to apply to federal prisoners by default, unless they deviated from those requirements in §2255(h). To *amicus*, the new-facts exception illustrates this approach. This argument, however, is undercut by the fact that in §2244(b)(2)(A) and §2255(h)(2), Congress repeated verbatim the standard for when a second or successive filing can proceed based on a new, retroactive rule of constitutional law. If §2244(b)(2)(A) already provided the default rule, there would have been no need for Congress to repeat it in §2255(h)(2), rendering its

inclusion mere surplusage. *Hohn*, 524 U. S., at 249 (declining "to adopt a construction making another statutory provision superfluous").

At bottom, the best textual reading of both §2255(h) and §2244(b) is that, when a federal prisoner moves for authorization, a panel can authorize the filing if it satisfies one of the two grounds in §2255(h), the "two—and only two—conditions in which a second or successive §2255 motion may proceed." *Jones*, 599 U. S., at 477.

## B

*Amicus*'s remaining nontextual arguments do not change this conclusion. She contends that §2244(b)(1) is a necessary tool, indeed "central," for panels to meet §2244(b)(3)(D)'s 30-day deadline, and that Congress therefore must have intended for it to apply in all cases in which authorization is needed. Brief for Court-Appointed *Amicus Curiae* 12, 23–26. That logical leap lacks sufficient foundation.

For one, it is not clear why searching through case files to see if the litigant has raised a claim before is any easier than determining whether the litigant has identified new evidence or a new rule of constitutional law that is retroactive. As the parties explain, it seems just as likely that the panel's obligation to assess only whether a filing has made a prima facie showing that it satisfies §2255(h)'s content requirements, and not to undertake a more searching inquiry on the merits, is what facilitates the 30-day deadline. See Reply Brief for Petitioner 9–10; Reply Brief for United States 9; see also *Tyler* v. *Cain*, 533 U. S. 656, 664, 661, n. 3 (2001). *Amicus* certainly provides no evidence to suggest that her hypothesis is the more plausible one.[8] Regardless,

———————

[8] For support, *amicus* relies on the fact that the three Circuits that do not apply §2244(b)(1) to federal prisoners do not consider the 30-day deadline binding, suggesting that the failure to apply §2244(b)(1)'s old-claim bar is the reason for their failure to comply with the 30-day

*amicus*'s "speculation as to Congress' intent" in enacting the old-claim bar and 30-day deadline "cannot replace the actual text" Congress enacted. *Magwood*, 561 U. S., at 334.

*Amicus* further argues that Congress meant for AEDPA to treat second or successive filings by federal and state prisoners the same. As already explained, however, AEDPA is replete with examples of Congress treating state and federal prisoners differently—including in the context of limitations on second or successive filings. *Supra*, at 18–19.[9]

Some courts, including the Eleventh Circuit below, have relied on this policy justification and others like it in applying §2244(b)(1) to bar second or successive motions filed by federal prisoners under §2255(h). See, *e.g.*, *In re Baptiste*, 828 F. 3d 1337, 1339 (2016) ("[I]t would be odd indeed if Congress had intended to allow federal prisoners to refile precisely the same non-meritorious motions over and over again while denying that right to state prisoners"). Those courts erred: "[P]urposive argument simply cannot overcome the force of the plain text." *Mohamad*, 566 U. S., at 460. Any concern associated with Congress allowing old-claim repeat litigation for federal prisoners, moreover, is overstated: All claims, even the repeat ones, must meet the

―――――――

deadline in all cases. Brief for Court-Appointed *Amicus Curiae* 24–25. *Amicus* overlooks, however, that three out of the six Circuits that apply §2244(b)(1) to federal prisoners also do not treat that deadline as binding. Compare *In re Williams*, 898 F. 3d 1098, 1102, n. 5 (CA11 2018) (Wilson, J., specially concurring) (noting that the Second, Third, and Seventh Circuits do not treat the 30-day deadline as binding, and that the Eighth Circuit has not yet "opined on the issue"), with *supra*, at 5, n. 1 (collecting those Circuits on the side of the Circuit split applying §2244(b)(1) to federal prisoners).

[9] This is not the only way in which Congress has treated old claims filed by federal and state prisoners differently. Section 2244(c) bars state prisoners from raising a claim or challenging facts in the federal postconviction setting that were adjudicated by this Court on direct review. This bar does not apply to federal prisoners, even though this Court can also exercise jurisdiction over appeals on direct review of federal convictions.

"strictly limited" threshold requirements of §2255(h), *Jones*, 599 U. S., at 476, and should they survive that review, they must still conform with the demanding statute of limitations contained in §2255(f), *Dodd* v. *United States*, 545 U. S. 353, 359 (2005). Very few claims will satisfy either, let alone both. Ultimately, there is "no reason to doubt" that "Congress said what it meant and meant what it said" in §2244(b)(1) and §2255(h). *Loughrin* v. *United States*, 573 U. S. 351, 360 (2014).[10]

\* \* \*

For these reasons, §2244(b)(1) does not apply to second or successive motions filed by federal prisoners challenging their convictions or sentences under §2255(h). The Court leaves it to the Eleventh Circuit to determine in the first instance whether Bowe should receive authorization to file a second or successive motion under the correct standard. The judgment below is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

--------

[10] Although the common law did not apply traditional res judicata principles to habeas petitions, courts developed different equitable doctrines to address abuses of the writ. See *McCleskey* v. *Zant*, 499 U. S. 467, 479–489 (1991). Congress can displace those doctrines, but in the absence of evidence of that intent, federal courts can continue to use those common-law tools. Cf. *Banister* v. *Davis*, 590 U. S. 504, 515 (2020) (concluding that AEDPA did not displace the historical practice of applying Federal Rule of Civil Procedure 59(e) in habeas). Section 2244(b) codified a "modified res judicata rule" for second or successive petitions. *Felker* v. *Turpin*, 518 U. S. 651, 664 (1996). As the Government argues here, AEDPA may not have displaced other practices that courts can still use to address repetitive filings made by federal prisoners in the absence of §2244(b)(1). See Brief for United States 48–50.

# SUPREME COURT OF THE UNITED STATES

---

No. 24–5438

---

## MICHAEL BOWE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[January 9, 2026]

JUSTICE JACKSON, concurring.

I agree with the Court that, under our precedents, Congress was required to say more if it wanted 28 U. S. C. §2244(b)(3)(E) to strip our jurisdiction over federal prisoners' requests for review of panel-certification decisions. See *ante,* at 10. I likewise agree with the Court's conclusion that §2244(b)(1)'s bar on do-over claims in second or successive applications applies only to state prisoners. See *ante,* at 20–21. I write separately to offer my view of what Congress likely sought to accomplish with §2244(b)(3)(E): insulating a three-judge panel's properly made (even if erroneous) gatekeeping determination from further review. The provision's language, our decision in *Castro* v. *United States*, 540 U. S. 375, 381 (2003), and the broader statute's detailed gatekeeping scheme all support this interpretation. Because the three-judge panel here did not deny Bowe's petition pursuant to the statutorily prescribed procedures, I think it did not make the sort of determination Congress intended to insulate.

## I

Section 2244(b)(3)(E) provides that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." This provision thus prevents our Court from

reviewing a certiorari petition whose "subject" is the "grant" or "denial" of a request for "authorization . . . to file a second or successive application." That proscription does not cover Bowe's petition.

In its decision below, the Court of Appeals did not grant or deny Bowe authorization to proceed on his successive claim. Rather, it "dismissed" his proposed claim "for lack of jurisdiction." *In re Bowe*, Civ. No. 24–11704 (CA11, June 27, 2024), App. 79. True, "the label attached to an order" does not erase its "practical effect." *Abbott* v. *Perez*, 585 U. S. 579, 594 (2018) (internal quotation marks omitted); see also *post*, at 17, n. 4 (GORSUCH, J., dissenting). But, in this case, the distinction between a denial and a dismissal is practical, not semantic.

As I read §2244(b)(3)(E), a "grant or denial" occurs when a three-judge panel goes through the screening procedures Congress has prescribed and applies the appropriate criteria for second or successive claims.[1] Here, the three-judge panel never actually applied the relevant criteria to Bowe's motion—that is, the criteria for federal prisoners under §§2255(h)(1) and (h)(2). Instead, the panel reflexively dismissed Bowe's authorization request, holding that §2244(b)(1)'s bar on do-over claims deprived it of jurisdiction, even though §2244(b)(1) applies only to state prisoners, for the reasons the Court explains. *Ante,* at 23.

As a result, a three-judge panel never undertook the required process for evaluating—*i.e.*, for granting or denying—Bowe's authorization request. Put differently,

———————
[1] Today's dispute encompasses a disagreement about which set of statutory criteria applies to *federal* prisoners: §2244(b)(1) or §2255(h). According to JUSTICE GORSUCH, "[e]veryone agrees" that §2244(b)(3)(E) "precludes us from exercising certiorari jurisdiction to review an appellate panel's decision granting or denying certification to *state* prisoners." *Post*, at 3 (dissenting opinion) (emphasis added). I agree with that assertion, but, as I will explain, only insofar as it refers to appellate-panel decisions that actually apply the statutory criteria and specified procedures for granting or denying state prisoners' authorization requests.

because the panel *dismissed* Bowe's petition, there was no "grant or denial" of his "authorization" request that could be challenged in a petition for certiorari, as §2244(b)(3)(E) requires.

This reading of §2244(b)(3)(E) finds support in *Castro*. That case, like this one, came to us in a distinct posture. Castro, a federal prisoner, filed a motion in the District Court to vacate his sentence under §2255. See 540 U. S., at 378. Because Castro did not understand his motion to be second or successive, he did not first seek authorization from a three-judge panel in the Court of Appeals. See *id.*, at 378–379; see also 28 U. S. C. §2244(b)(3)(A) ("Before a second or successive application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application"). Taking a different view than Castro, the District Court "dismissed the motion for failure to comply with" the statutory restrictions on second or successive claims. 540 U. S., at 379. On appeal, the Eleventh Circuit agreed with the District Court's analysis and affirmed without evaluating Castro's motion on the merits. Castro subsequently filed a petition for a writ of certiorari, seeking to challenge the Eleventh Circuit's second or successive determination. But the Government contended that we lacked jurisdiction under §2244(b)(3)(E). See *id.*, at 379–380.

We ultimately held that §2244(b)(3)(E) did not bar our review of Castro's petition. In so holding, we emphasized that Castro had not "asked the Court of Appeals to grant, and it nowhere denied, any 'authorization . . . to file a second or successive application.'" *Id.*, at 380 (quoting §2244(b)(3)(E)). Instead, the case came to the Eleventh Circuit on appeal, after the District Court had already made its own determination about the viability of Castro's motion. In that posture, we explained, the Eleventh Circuit had not made a "statutorily relevant 'denial' of a request"

for authorization—even though the court's conclusion "had the *effect* of denying 'authorization'" to Castro. *Id.*, at 380. Against that procedural background, the "'subject'" of Castro's certiorari petition was "not the Court of Appeals' 'denial of an authorization,'" so we retained our jurisdiction despite §2244(b)(3)(E). *Ibid.*

So too here. To be sure, unlike *Castro*, Bowe's case has moved through the initial procedure for second or successive motions—that is, Bowe comes to us after first requesting authorization from a three-judge panel in the Court of Appeals. But, just like *Castro*, the three-judge panel never made a "statutorily relevant" denial of Bowe's authorization request. To do so, the panel would have had to go through the applicable statutory criteria and determine whether Bowe's successive motion satisfied the conditions of §§2255(h)(1) and (h)(2). Because the panel never made such a determination, it neither granted nor denied Bowe's authorization request, as required to bar our review under §2244(b)(3)(E).[2]

––––––––––

[2] Because *Castro*'s analysis calls for a "statutorily relevant" denial, 540 U. S., at 380, it lays bare JUSTICE GORSUCH's mistaken contention that "[a] denial is a denial" for §2244(b)(3)(E) purposes, *post*, at 17, n. 4. Reading the statute as I do also resolves the purported tension in the Court's opinion that JUSTICE GORSUCH elsewhere identifies: Why would the Court "take the trouble to show" that Castro, a federal prisoner, "wasn't pursuing a second or successive attack subject to subparagraph (E)" if that provision had "no bearing whatsoever on federal prisoners in the first place?" *Post*, at 7. The answer, of course, is that the Court had no need to resolve subparagraph (E)'s application to all federal prisoners when the provision so clearly did not apply to Castro. In other words, the Court left open the question whether subparagraph (E) prevented our review of a certiorari petition whose "'subject'" actually is a "statutorily relevant 'denial' of a request" for authorization to file a successive claim under 28 U. S. C. §2255. 540 U. S., at 380. I agree with today's conclusion that subparagraph (E) does not prevent our review under those circumstances. This separate writing observes only that *Castro*'s logic likewise authorizes our review of Bowe's petition.

## II

One might reasonably question why Congress would have crafted §2244(b)(3)(E) to achieve such a technical distinction: barring further review of denials on the merits while permitting further review of the panel's use of the wrong criteria or procedures. As JUSTICE GORSUCH points out, the effect is the same; either way, the prisoner may not file his second or successive motion. *Post*, at 17, n. 4. But in my view, the distinction is not a technical (or meaningless) one. Instead, it fits neatly within, and advances, the gatekeeping scheme Congress established.

For evidence, look no further than §2244(b)(3)'s other subparagraphs, which set forth a multipart gatekeeping process for second or successive claims. First, a prisoner "move[s] in the appropriate court of appeals for an order authorizing" a second or successive claim. §2244(b)(3)(A). Second, "a three-judge panel" considers the request for authorization. §2244(b)(3)(B). Third, the panel "determines" whether the prisoner has made "a prima facie showing" of satisfying the relevant statutory "requirements." §2244(b)(3)(C). Fourth, the panel issues its determination in no more than "30 days." §2244(b)(3)(D).

With §2244(b)(3), Congress plainly erected a specific screening process for second or successive petitions. And with subparagraph (E), in particular, Congress afforded that process finality—but only if the prescribed procedures have been properly followed.

By contrast, consider a panel that completely ignores the statute's specified gatekeeping requirements when making the authorization determination. Maybe the panel consists of five judges instead of three. Or maybe the panel automatically and arbitrarily denies all requests for authorization, refusing to evaluate whether the prisoner has satisfied the relevant statutory criteria. It would be exceedingly strange for us to conclude that Congress meant to insulate a rogue panel's actions from further review. Indeed, why

would Congress devise such a detailed gatekeeping scheme
while foreclosing review of its evasion?

At bottom, then, §2244(b)(3)(E) rationally operates as a
finality provision, designed to give a three-judge panel the
last say when the panel properly performs its gatekeeping
function.  But when the panel goes through the wrong pro-
cedures (as it did in *Castro*) or applies the wrong criteria (as
it did here), it has not made the requisite "grant or denial
of an authorization" that §2244(b)(3)(E) insulates from fur-
ther review.

For that reason, in my view, even if Congress had spoken
more clearly about §2244(b)(3)(E)'s application to federal
prisoners, the panel's mistaken dismissal—instead of de-
nial—of Bowe's petition makes §2244(b)(3)(E) patently in-
applicable.

# SUPREME COURT OF THE UNITED STATES

———————

No. 24–5438

———————

## MICHAEL BOWE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[January 9, 2026]

JUSTICE GORSUCH, with whom JUSTICE THOMAS and JUSTICE ALITO join, and with whom JUSTICE BARRETT joins as to Part I, dissenting.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), courts of appeals serve an important gatekeeping function. When a state prisoner seeks to challenge his conviction or sentence in federal court for the first time, he normally proceeds directly to district court under 28 U. S. C. §2254. But before a state prisoner may bring a second or successive attack in district court, AEDPA requires him to obtain a certificate from a panel of the relevant federal court of appeals. And under §2244, an appellate panel may certify a case to proceed only subject to certain demanding rules.

Two are relevant here. First, an appellate panel may not authorize do-over claims—claims the prisoner already "presented in a prior" federal challenge. §2244(b)(1). Second, neither a state prisoner nor state authorities may file a petition for rehearing or seek "a writ of certiorari" to contest an appellate panel's decision granting or denying certification. §2244(b)(3)(E).

AEDPA contains parallel directions for federal prisoners. When a federal prisoner seeks to challenge his conviction or sentence collaterally for the first time, he usually proceeds directly to district court under §2255. But before he can pursue a second or successive challenge, it "must be

certified as provided in section 2244 by a panel of the ap-
propriate court of appeals." §2255(h). Through that cross-
reference, then, federal prisoners seeking to bring second or
successive collateral attacks are generally subject to the
same rules as their state counterparts.

That brings us to Michael Bowe. After shooting two
guards while trying to rob an armored vehicle in 2008, he
pleaded guilty to three federal crimes. Since then, he has
pursued five nearly identical postconviction challenges. In
each, Mr. Bowe has asserted that one of the statutes under
which he was convicted, 18 U. S. C. §924(c), is unconstitu-
tional under our void-for-vagueness doctrine. And in all but
the first of his challenges, Mr. Bowe has centered his argu-
ment around the same case: *United States* v. *Davis*, 588
U. S. 445 (2019).

When Mr. Bowe sought permission to bring his latest col-
lateral attack, the Eleventh Circuit demurred. Because he
had pursued his *Davis* claim three times before, the court
held that his latest filing represented an impermissible do-
over claim barred by §2244(b)(1). Now, Mr. Bowe asks us
to reverse the Eleventh Circuit's decision. Yes, he concedes,
AEDPA bars state prisoners from pursuing do-over claims.
But, he insists, federal prisoners are different. They (and
they alone) are free to bring the same claim in district court
over and over again.

Before we can take up that question, however, we must
answer another. Under §2244(b)(3)(E), Mr. Bowe acknowl-
edges, this Court lacks certiorari jurisdiction to review an
appellate panel's decision denying a state prisoner leave to
file a second or successive collateral challenge. But here
again, Mr. Bowe argues federal prisoners are different. He
submits that they (and, once more, they alone) are free to
challenge adverse certification decisions on writ of certio-
rari.

Because I do not believe that either of Mr. Bowe's pleas for federal-prisoner exceptionalism can be squared with AEDPA's text, I respectfully dissent.

## I

I understand my colleagues' eagerness to reach the merits of this case. As they observe, the courts of appeals are divided on the question whether federal prisoners like Mr. Bowe may pursue do-over claims. *Ante,* at 5. Doubtless, too, it is often this Court's job to resolve circuit splits and bring nationwide uniformity to the application of federal law.

But it is also one of our paramount responsibilities to respect the limits on our jurisdiction. And, to my eyes, AEDPA precludes us from exercising certiorari jurisdiction here. Section 2244 instructs that "the grant or denial of an authorization by a court of appeals to file a second or successive" collateral attack "shall not be the subject of a petition . . . for a writ of certiorari." §2244(b)(3)(E). Everyone agrees this provision precludes us from exercising certiorari jurisdiction to review an appellate panel's decision granting or denying certification to state prisoners. And because §2255(h) tells us that the same rules apply to federal prisoners, exactly the same outcome follows for federal prisoners like Mr. Bowe.

Importantly, though, that does not mean we lack for ways to resolve the circuit split my colleagues worry over. AEDPA may prevent us from exercising certiorari jurisdiction under §1254(1). But AEDPA not only leaves untouched our power to entertain original habeas petitions filed directly in this Court. *Felker* v. *Turpin*, 518 U. S. 651, 660–661 (1996). AEDPA also leaves untouched our power to accept certified "question[s] of law" from the federal courts of appeals and provide them with "binding instructions" on how to answer those questions under §1254(2), a provision

found right next door to the one governing our certiorari jurisdiction.

Accustomed as we are to proceeding by way of certiorari under §1254(1), it's true that we have rarely accepted certified questions under §1254(2). But a rare procedure befits rare circumstances. And this case involves a rare circumstance indeed—a circuit split that would otherwise stagger on forever. Rather than ignore §2244's express constraint on our certiorari jurisdiction, then, we might have simply signaled to the courts of appeals our willingness to accept certification in this or a similar case. Cf. *United States* v. *Rice*, 327 U. S. 742, 746–747 (1946) (accepting certification in the uncommon situation of a "circuit court of appeals . . . equally divided on" questions of law).

A

To appreciate why we lack certiorari jurisdiction, it helps to start with a bird's eye view of how AEDPA addresses second or successive collateral attacks.

AEDPA seeks "to advance the finality of criminal convictions." *Mayle* v. *Felix*, 545 U. S. 644, 662 (2005). It does so, in part, by imposing "stric[t] limit[s]" on the ability of federal and state prisoners to bring multiple postconviction attacks in federal court. See *Jones* v. *Hendrix*, 599 U. S. 465, 476 (2023). So, for example, a federal prisoner's second or successive collateral attack "must be certified . . . to contain" a showing of either new facts or new law. §2255(h). The new-facts route requires the prisoner to show that he possesses newly discovered evidence that, if proved, would establish his innocence clearly and convincingly. See §2255(h)(1). The new-law route requires him to argue that his conviction or sentence is unlawful in light of a new rule of constitutional law that this Court has made retroactively

applicable to cases on collateral review.  See §2255(h)(2).
Similar rules apply to state prisoners under §2244(b)(2).[1]

Even beyond those constraints, AEDPA imposes others.
A federal prisoner's second or successive §2255 attack not
only must "contain" either new facts or new law; it also
"must be certified as provided in section 2244."  §2255(h).
Everyone agrees this cross-reference directs us to
§2244(b)(3).  That paragraph provides these instructions:

> "(A)  Before a second or successive application per-
> mitted by this section is filed in the district court, the
> applicant shall move in the appropriate court of ap-
> peals for an order authorizing the district court to con-
> sider the application.

> "(B)  A motion in the court of appeals . . . shall be de-
> termined by a three-judge panel of the court of appeals.

> "(C)  The court of appeals may authorize the filing of
> a second or successive application only if it determines
> that the application makes a prima facie showing that
> the application satisfies the requirements of this sub-
> section.

> "(D)  The court of appeals shall grant or deny the au-
> thorization . . . not later than 30 days after the filing of
> the motion.

> "(E)  The grant or denial of an authorization . . . shall
> not be appealable and shall not be the subject of a peti-
> tion for rehearing or for a writ of certiorari."

With this overview in hand, our lack of certiorari juris-
diction quickly becomes clear.  Section 2244(b)(3)(E) prohib-
its a state prisoner from invoking our certiorari jurisdiction
to challenge an order denying him leave to file a second or
successive collateral attack.  Indeed, this Court has already
held as much.  *Felker*, 518 U. S., at 658–659.  And §2255(h)

_____

[1] Put aside for the moment AEDPA's additional instructions about do-
over claims—they become relevant only when we come to the merits.  See
Part II, *infra.*

tells us that a federal prisoner seeking to pursue a second
or successive collateral attack must obtain certification "as
provided in section 2244" for state prisoners. Accordingly,
the same bar on certiorari applies.

That commonsense conclusion finds unanimous support
in the courts of appeals. Just as §2244(b)(3)(E) bars certio-
rari petitions, it also bars petitions for panel or en banc re-
hearing. Since AEDPA's adoption in 1996, a great many
federal prisoners have sought rehearing on the theory that
this rule applies only to state prisoners, not them. Yet
every circuit to consider that approach has rejected it, rec-
ognizing instead that subparagraph (E) applies to federal
prisoners no less than their state counterparts, and thus
prohibits them from petitioning for panel or en banc rehear-
ing. See, *e.g.*, *In re Clark*, 837 F. 3d 1080, 1082–1083 (CA10
2016) (collecting cases); *In re Baptiste*, 828 F. 3d 1337, 1340
(CA11 2016); *Págan-San Miguel* v. *United States*, 736 F. 3d
44, 46, n. 1 (CA1 2013) (*per curiam*); *In re Sonshine*, 132
F. 3d 1133, 1134 (CA6 1997).

Our own precedent carries the same message. In *Castro*
v. *United States*, 540 U. S. 375 (2003), the government ar-
gued that subparagraph (E) precluded this Court from con-
sidering a federal prisoner's challenge to an appellate panel
decision *denying* him leave to file a second or successive at-
tack. At the same time, the government contended, the
terms of subparagraph (E) leave it free to challenge many
appellate panel decisions *granting* a federal prisoner per-
mission to proceed. *Id.*, at 380–381. The Court rejected
both submissions. First, after conducting a painstakingly
detailed analysis of the filing history of the particular pris-
oner before it, the Court concluded that his challenge was
not in fact second or successive. So subparagraph (E)—
which applies only to second or successive challenges—
simply was not implicated in the case at hand. See *id.*, at
379–380. Second, the Court rejected the government's
"anomal[ou]s" suggestion that subparagraph (E) might

allow it, but not a prisoner, to challenge an adverse appellate panel decision regarding a second or successive filing. *Id.*, at 380–381.

Neither holding makes sense unless subparagraph (E) applies to federal prisoners pursuing second or successive collateral attacks. Why take the trouble to show *this* federal prisoner wasn't pursuing a second or successive attack subject to subparagraph (E)—and why bother rejecting the government's lopsided argument about how subparagraph (E) works—if subparagraph (E) has no bearing whatsoever on federal prisoners in the first place? While *Castro* may not have announced a "holding" that subparagraph (E) applies to federal prisoners pursuing second or successive collateral attacks, *ante,* at 9, n. 3, all of its work was surely grounded on that premise.

Our decision in *Hohn* v. *United States*, 524 U. S. 236 (1998), is equally telling. That case concerned 28 U. S. C. §2253(c), which requires a federal prisoner to obtain a certificate of appealability (COA) before he may appeal a district court's adverse decision in a §2255 proceeding. The jurisdictional question before the Court was whether a court of appeals' denial of a COA is a "case" within the meaning of §1254(1) and thus reviewable on certiorari. 524 U. S., at 241. Concluding that it is, the Court leaned heavily on a comparison between §2253(c) and §2244(b)(3)(E). The latter provision, the Court said, imposes a "clear limit" on our jurisdiction. *Id.*, at 250. And, the Court reasoned, the existence of that "clear limit," coupled with the absence of comparable language in §2253(c), suggested that federal prisoners may seek certiorari to challenge an adverse COA decision. See *id.*, at 249–250. Much as in *Castro*, the Court in *Hohn* may not have expressly reached a holding about §2244(b)(3)(E)'s meaning. But its work only makes sense if that provision "clear[ly]" precludes certiorari jurisdiction for federal prisoners.

Really, the idea that §2244(b)(3)(E) applies to federal prisoners and bars them from seeking certiorari has been uncontroversial since AEDPA's adoption three decades ago. So much so that, until recently, even the author of today's majority opinion accepted it. In another case involving Mr. Bowe (yes, the same Mr. Bowe), our colleague urged the Court to consider accepting an *original* habeas petition to resolve the very same do-over circuit split now before us. *In re Bowe*, 601 U. S. ___ (2024) (SOTOMAYOR, J., statement respecting denial of habeas corpus). Invoking that unusual procedure, our colleague insisted, was necessary precisely because "§2244(b)(3)(E)'s bar on petitioning for review" would preclude Mr. Bowe from invoking our certiorari jurisdiction. *Id.*, at ___ (slip op., at 2). That was right then, and it is right still.

B

How does Mr. Bowe respond? He does not dispute that all the rules laid out in §§2244(b)(3)(A) through (E) apply to state prisoners. As a result, he acknowledges, neither state prisoners nor state officials may challenge an appellate panel's certification decision on certiorari. Accordingly, there are *only* two ways to resolve circuit splits about §2244 in the state-prisoner context: original habeas writs and certification under §1254(2).

Even when it comes to federal prisoners, Mr. Bowe cedes much ground. He admits that §2255(h) subjects federal prisoners to the same rules that apply to state prisoners in §§2244(b)(3)(A), (B), (C), and (D). Brief for Petitioner 32. He concedes, too, that every court of appeals to consider the issue has held that subparagraph (E) also applies to federal prisoners. Tr. of Oral Arg. 15. Still, Mr. Bowe insists, he's discovered something all those courts (and this one) have missed for the past 30 years: Subparagraph (E)—and it alone—doesn't apply to federal prisoners.

His theory runs this way. Section 2255(h) instructs that a federal prisoner's second or successive attack "must be certified as provided in section 2244." That language, Mr. Bowe submits, sweeps in only those parts of §2244 that address how an appellate panel goes about certifying a second or successive filing. And it does not sweep in subparagraph (E) because—unlike all of §2244(b)(3)'s other subparagraphs—it does not "provide" for certification.

It may be a wonderfully convenient theory for Mr. Bowe, but no court has adopted it for good reason. Just look again at the block quotation of statutory text above. Each and every one of §2244(b)(3)'s subparagraphs "provide[s]" for how a second or successive collateral attack "must be certified" by a "panel of the appropriate court of appeals." §2255(h). Subparagraph (A) routes the certification decision to a court of appeals. Subparagraph (B) directs that the decision must be made by a three-judge panel. Subparagraph (C) sets forth the standard the panel must use when deciding whether to certify. Subparagraph (D) specifies the timing for a decision. And subparagraph (E) provides that panel certification is the exclusive avenue for certification decisions (without foreclosing the panel from asking this Court, via §1254(2), for "instructions" on "question[s] of law" along the way). What begins with an application to a three-judge panel under subparagraph (A) ends with its disposition by that same panel under subparagraph (E).

Notice, too, the hash Mr. Bowe's interpretation makes of the rest of the statute. Subparagraph (B) mandates that a certification motion "shall be determined by a three-judge panel of the court of appeals." What would be the point of that direction if, as Mr. Bowe suggests, a prisoner could petition a court of appeals (en banc) or this Court (on certiorari) to certify a second or successive collateral attack instead? Plainly, subparagraph (E) works in tandem with subparagraph (B) to ensure that the certification decision

comes from, and only from, a three-judge panel. Ignoring (E) undermines (B).

Ignoring (E) also makes a nonsense of subparagraph (D)'s instruction requiring a panel to grant or deny certification within 30 days. That mandate is perfectly sensible if, as subparagraph (E) provides, the decision of a three-judge panel is final. But it is wholly insensible if, as Mr. Bowe supposes, any prisoner can seek panel rehearing, then en banc rehearing, and certiorari too. The entire point of AEDPA and its certification process was to "reduce delays," *Rhines* v. *Weber*, 544 U. S. 269, 276 (2005) (internal quotation marks omitted), and "advance the finality of criminal convictions," *Mayle*, 545 U. S., at 662. Yet on Mr. Bowe's reading, the certification process alone would typically take not 30 days but many multiples of that.[2]

C

Mr. Bowe's line of argument, understandably, causes my colleagues some discomfort. Thankfully, they are unwilling to say—as Mr. Bowe does—that every court of appeals to have reached the issue has erred in holding that subparagraph (E) bars federal prisoners from seeking panel or en banc rehearing. *Ante,* at 16. To avoid calling those sound decisions into question, the majority pivots in a different direction. On its theory, even if subparagraph (E) bars federal prisoners from pursuing petitions for panel and en banc rehearing, the statute does not bar them from seeking certiorari.

_____

[2] Mr. Bowe suggests this is no problem because subparagraph (E) allows courts of appeals to order rehearing *sua sponte*. And having discovered porosity in this otherwise solid subparagraph, Mr. Bowe wonders why we need to worry about finality at all. But even if AEDPA tolerates *sua sponte* rehearing, that is no threat to finality because *sua sponte* rehearing is rare, and judges do not call for it needlessly. The same is true of certification under §1254(2), for that matter. These modest, rarely employed, and judicially initiated procedures are hardly camels' noses poking under AEDPA's tent.

There is an obvious reason Mr. Bowe did not press that eccentric theory before us:  It cannot be squared with the statutory text.  Section 2255 instructs that a federal prisoner's second or successive attack "must be certified as provided in section 2244."  And what subparagraph (E) "provide[s]" is a package deal.  The statute bars rehearing petitions and certiorari petitions in a single breath:  It provides that a panel's certification decision "shall not be the subject of a petition for rehearing or for a writ of certiorari." §2244(b)(3)(E).  The notion that all of subparagraph (E) might apply to federal prisoners minus the six words "or for a writ of certiorari" is utterly implausible as a textual matter.

One might think this problem would cause the majority to hesitate.  Instead, my colleagues plow on, conjuring up a clear-statement rule to support their course.  Yes, the majority admits, a fair reading of §2255(h)'s cross-reference to §2244 "might include" §2244(b)(3)(E)'s certiorari bar.  *Ante,* at 19.  But, my colleagues insist, Congress "must speak clearly" when it wishes to withdraw our certiorari jurisdiction, *ante*, at 8, and the language Congress employed here is not "clear" enough to be worth following*, ante*, at 12–14.

There's no avoiding the odd contours of the majority's clear-statement rule.  Apparently, Congress may restrict and channel collateral review in the lower courts, as it has done in subparagraphs (A) through (D).  Congress may also bar petitions for panel or en banc rehearing, as it has done in subparagraph (E), cutting off the usual method by which a court of appeals "reconcile[s] its internal difficulties." *Wisniewski* v. *United States*, 353 U. S. 901, 902 (1957) (*per curiam*).  Seemingly, Congress can do all that without having to satisfy any clear-statement rule.  The *only* work the majority's rule performs concerns certiorari petitions— and the *only* effect that rule has is to pencil out subparagraph (E)'s six words "or for a writ of certiorari" in cases

involving federal prisoners. All while leaving those same six words in force when it comes to state prisoners.

That gerrymandered rule may suit Mr. Bowe's present needs and appeal to our vanity. But it is pointless. Even if a clear statement were required here, Congress gave us one. For all the reasons explored above, AEDPA's certiorari bar imposes, in *Hohn*'s words, a "clear limit" on our jurisdiction. See Part I–A, *supra.* Nor, again, is there any need to pretend otherwise just to address the circuit split Mr. Bowe identifies, for we can just as easily reach it through certification under §1254(2) as we can through certiorari under §1254(1). Indeed, the Eleventh Circuit refused to invoke §1254(2) only because it believed we would deny certification—a belief we could easily dispel in this case simply by saying it isn't so. See App. 78–79.

Worse still, the majority's bespoke certiorari-for-federal-prisoners-clear-statement rule lacks any grounding in law. Just ask yourself: If not from thin air, where could such a rule possibly come from?

Perhaps the most obvious candidate would be the Constitution. Sometimes, after all, when faced with two competing statutory interpretations this Court invokes the canon of constitutional avoidance to choose the one that avoids, rather than implicates, a constitutional problem. See, *e.g.*, *Clark* v. *Martinez*, 543 U. S. 371, 381–382 (2005). But the majority does not rest its clear-statement rule on that doctrine. Nor could it. This Court has already expressly rejected the notion that §2244(b)(3)'s limitations violate the Suspension Clause or the Exceptions Clause, the two constitutional provisions most obviously relevant to cases like this one. See *Felker*, 518 U. S., at 661–664.

That should come as no surprise either. The writ of habeas corpus traditionally addressed cases of executive detention without trial. Accordingly, a federal prisoner was ineligible for habeas corpus if he had been convicted by a court of competent jurisdiction. See *id.*, at 663; *Brown* v.

*Davenport*, 596 U. S. 118, 128–129 (2022). It was not until the 20th century that this Court began allowing federal prisoners to mount collateral attacks on jurisdictionally sound convictions. Cf. *Glasgow* v. *Moyer*, 225 U. S. 420, 429 (1912) ("The principle of the cases is the simple one that if a court has jurisdiction of the case the writ of *habeas corpus* cannot be employed to re-try the issues, whether of law, constitutional or other, or of fact"). Put simply, for much of our Nation's history, there was no collateral review of the vast majority of convictions, much less a right to certiorari in such cases.

With constitutional avoidance off the table, the majority advances an unbriefed theory to prop up its novel clear-statement rule. Citing *Boechler* v. *Commissioner*, 596 U. S. 199 (2022), the majority observes that this Court generally reads statutorily prescribed procedural requirements as forfeitable claim-processing rules rather than unwavering jurisdictional mandates unless Congress "clearly" indicates otherwise. *Ante*, at 11. And, the majority insists, it is doing something similar here. See *ibid.* Hardly. No one disputes that AEDPA's certiorari bar at issue here *is* jurisdictional. So *Boechler* not only does not "contro[l] this case," *ante*, at 11, n. 5, it has nothing to say about this case at all.

The majority's invocation of *Boechler* is not just inapt, it is unfortunate. Two years ago, in an obscure administrative law case, this Court expressly refused to treat *Boechler* as a permission slip for creating any manner of new interpretive presumptions that may happen to suit our tastes but that do not "approximat[e] rea[l]" statutory meaning. Compare *Loper Bright Enterprises* v. *Raimondo*, 603 U. S. 369, 455, n. 1 (2024) (KAGAN, J., dissenting) (arguing that, in light of cases like *Boechler*, we may as well accept other interpretive fictions like *Chevron*), with 603 U. S., at 399 (majority opinion) (holding otherwise). Yet that is exactly how the majority treats *Boechler* today.

The picture does not improve from there. The *Boechler* clear-statement rule operates only in a particular context and exists only for particular reasons. Treating too many rules as jurisdictional rather than as claim-processing rules, this Court has said, would "result in the waste of judicial resources and may unfairly prejudice litigants." *Henderson* v. *Shinseki*, 562 U. S. 428, 434 (2011). Yet neither of those rationales applies here. If anything, it is the majority's new rule that promises to waste judicial resources by undermining finality. And there is no colorable argument that Congress acts unfairly by preventing both prisoners and governments from appealing adverse certification decisions. Far from respecting *Boechler*, then, the majority more nearly defies it.

With *Boechler* a dry hole, the majority finds itself forced to prospect elsewhere for legal authority. Its next stop is *Castro*. *Ante,* at 8–10. But the majority's quote mining of that decision only winds up highlighting just how unprecedented its course today really is.

In *Castro*, remember, the government advocated for a lopsided construction of §2244(b)(3)(E). On the government's view, the statute permitted it to seek certiorari to challenge a circuit decision granting certification, but precluded a federal prisoner from seeking certiorari to challenge a circuit decision denying certification. 540 U. S., at 380. As we have seen, the Court rejected that submission for two reasons. First, the prisoner there did not seek to pursue a second or successive attack subject to subparagraph (E). Second, the government's reading would have "close[d] our doors to a class of habeas petitioners seeking review" while leaving those same doors open to the government. *Id.*, at 381. Expanding on the second rationale, the Court said it would not endorse such an "anomal[ous]" reading of subparagraph (E) "without any clear indication that such was Congress' intent." *Id.*, at 380–381. Doubtless, this commentary reflected an intuition that Congress would not lightly treat

similarly situated litigants differently. But none of that speaks to the situation before us, where the construction of subparagraph (E) at issue is fair and square: no certiorari review of certification decisions, no matter who won below.

If anything, and as we have seen, *Castro* does more to hurt than help the majority's cause. See Part I–A, *supra*. Throughout that decision, the Court took as given that subparagraph (E) *does* bar federal prisoners from seeking certiorari to challenge adverse certification decisions regarding their second or successive filings. Why (again) would *Castro* take the trouble to explain that the challenge there wasn't a second or successive one if subparagraph (E) doesn't apply to federal prisoners anyway? And why would *Castro* worry about the anomalous possibility that only the government may seek certiorari when, in fact, federal prisoners can too?

The majority offers no colorable answers to these questions because none can be had. Just like *Hohn* and our colleague's opinion two years ago in *In re Bowe*, *Castro* fully appreciated that subparagraph (E) imposes a "*clear limit*" on our certiorari jurisdiction, one applicable to federal and state prisoners alike. *Hohn*, 524 U. S., at 250 (emphasis added); see also *In re Bowe*, 601 U. S., at \_\_\_ (slip op., at 2) (acknowledging that "§2244(b)(3)(E)'s bar on petitioning for review" would preclude Mr. Bowe himself from seeking certiorari).[3]

─────────

[3] Attempting to wring more yet from *Castro*, the majority points to its citation of *Utah* v. *Evans*, 536 U. S. 452 (2002), for the "principle that we read limitations on our jurisdiction to review narrowly." *Ante,* at 10 (internal quotation marks omitted). But *Evans* simply applied the anodyne presumption that federal agency action is amenable to *some* form of judicial review. See 536 U. S., at 463 (citing *Webster* v. *Doe*, 486 U. S. 592 (1988), and *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667 (1986)). That presumption speaks not at all to the postconviction setting, let alone second or successive collateral attacks like this one. In this context, a litigant has already enjoyed extensive judicial review,

Unable to identify any plausible authority in existing law for its clear-statement rule, the majority is ultimately left to summon it from the ether. To be sure, my colleagues begin by pointing to the (unremarkable) principle that this Court does not read "statutory silence as implicitly modifying or limiting . . . jurisdiction that another statute specifically grants." *Hertz Corp.* v. *Friend*, 559 U. S. 77, 83 (2010); *Felker*, 518 U. S., at 660–661. But from there, the majority engages in pure invention, devising a broad new legal rule that even *express* limitations on our certiorari jurisdiction are unenforceable absent a clear statement. See *ante,* at 8.

What a leap that is. This case is nothing like those in which we have historically declined to infer limitations on our certiorari jurisdiction based on statutory *silence*. All agree that §2255(h) *expressly* incorporates portions of §2244(b)(3). All agree that §2244(b)(3)(E) *expressly* bars "petition[s] for . . . writ[s] of certiorari." The only point of disagreement concerns how those explicit provisions fit together. I believe they fit together in a way that deprives us of jurisdiction. But even if I am wrong about that, this is hardly a case of "silen[t] or ambiguous" text, *Hertz*, 559 U. S., at 83–84, nor one involving provisions that "mak[e] no mention of our authority," *Felker*, 518 U. S., at 661. Truly, the majority's clear-statement rule comes from nowhere at all.

In the end, neither Mr. Bowe's textual arguments nor the majority's atextual theory can obscure AEDPA's message, one every court of appeals (and this Court) has understood since 1996. A litigant like Mr. Bowe may seek to pursue an original habeas petition in this Court. A court of appeals may certify questions to us. But §2244 bars state prisoners (and governments) from invoking our certiorari jurisdiction to challenge adverse certification decisions. Section 2255

---

including at least two opportunities to seek certiorari from us—first on direct review, and again in a first postconviction challenge.

extends that bar to federal prisoners. And because that bar applies here, we lack jurisdiction to decide this case. The majority's conclusion otherwise is as improbable as it is novel.[4]

## II

Because the majority concludes that we have jurisdiction to reach the merits, I offer my views too. The question here, recall, concerns the Eleventh Circuit's refusal to certify Mr. Bowe's latest collateral attack. Like most other circuits, the Eleventh Circuit has held that §2244(b)(1) bars do-over claims by both state and federal prisoners. And that provision, the court reasoned, barred Mr. Bowe's present challenge because he has already pursued the same challenge many times before.

———————

[4] In a final foray, Mr. Bowe and JUSTICE JACKSON contend that, even if subparagraph (E)'s certiorari bar generally applies to federal prisoners, it still does not apply in this particular case. Mr. Bowe's version of the argument goes like this. Subparagraph (E) bars certiorari petitions from appellate orders that "grant or den[y]" certification to pursue a second or successive attack. And, Mr. Bowe submits, that language doesn't apply to him because the Eleventh Circuit "dismissed" rather than "denied" his certification request. See App. 79. This argument fails, though, because "the label attached to an order is not dispositive"; its "'practical effect'" is. *Abbott* v. *Perez*, 585 U. S. 579, 594 (2018). And here, the practical effect of the Eleventh Circuit's "dismissal" order was to *deny* Mr. Bowe permission to pursue his second or successive attack.

JUSTICE JACKSON's version of the argument proceeds differently. She admits that a dismissal may have the practical effect of a denial. *Ante,* at 2 (concurring opinion). But, she insists, that doesn't hold true here because, by applying §2244(b)(1)'s do-over bar, the Eleventh Circuit applied the wrong "statutory criteria" to Mr. Bowe. *Ante*, at 4. There is just one problem. The statute bars review of any "grant or denial," not any "grant or denial made after applying the correct statutory criteria." JUSTICE JACKSON identifies nothing in the statute's terms that might allow us to turn the Eleventh Circuit's (supposed) *merits* error into a *jurisdictionally* decisive event. A denial is a denial. Recognizing the flaws of both versions of the argument, the majority rightly adopts neither.

In reversing the Eleventh Circuit, my colleagues do not question that §2244(b)(1) prohibits state prisoners' do-over claims. Nor do my colleagues question that Mr. Bowe seeks to pursue a do-over claim in this case. Instead, they hold that federal prisoners like him are free to file in district court as many do-over claims as they please. Once more, I disagree because I see nothing in AEDPA's text that supports that kind of special treatment for federal prisoners.

### A

Begin by walking through the relevant statutory provisions. Section 2255 requires a federal prisoner to satisfy two essential requirements before he can pursue a second or successive challenge. First, his filing must "contain" either new facts or new law sufficient to satisfy §2255(h)(1) or (h)(2). Second, his filing "must be certified" by a court of appeals under the rules outlined in §2244. And to win certification under §2244, everyone accepts, a federal prisoner must satisfy at least §§2244(b)(3)(A), (B), (C), and (D). *Ante*, at 12–13. (With jurisdiction now out of the picture, we can set aside the dispute over (E).)

From there the right answer lies only a few steps away. Section 2244(b)(3)(C) states that "[t]he court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application *satisfies the requirements of this subsection.*" (Emphasis added.) No one questions that this provision applies to state and federal prisoners equally. Brief for Petitioner 32; Brief for United States 25–26; *ante,* at 12–13. So by its terms, this provision means a federal prisoner must make "a prima facie showing" in a court of appeals that his second or successive filing satisfies the requirements of "this subsection"—namely, subsection (b) of §2244.

That tells us all we need to know. The very first provision of subsection (b) prohibits do-over claims. In the words of

§2244(b)(1), any claim presented in a prior application "shall be dismissed." As a result, AEDPA no more tolerates repetitive litigation by federal prisoners than it does by state prisoners. And the Eleventh Circuit was right to deny Mr. Bowe leave to file again the same claim he had already pursued many times before.

What the statutory language teaches on this point, context confirms. Next to subsection (b)(1) sits subsection (b)(2). There, Congress addressed second or successive filings presenting new (as opposed to do-over) claims. As laid out in the margin, subsection (b)(2)'s rules for state prisoners' new claims are similar to, but different from, §2255(h)'s rules for federal prisoners' new claims.[5] And because §2255(h) applies particularly to federal prisoners, its specific requirements displace §2244(b)(2)'s more generally applicable ones. See *Baltimore Nat. Bank* v. *State Tax Comm'n of Md.*, 297 U. S. 209, 215 (1936). So when a court of appeals asks whether a federal prisoner has made a "prima facie showing" that his proposed filing "satisfies the requirements of this subsection" under §2244(b)(3)(C), the requirements of §§2255(h)(1)–(2) step into the shoes that §2244(b)(2) would otherwise fill. Tellingly, however, §2255(h) contains no such federal-prisoner-specific language when it comes to do-over claims. Instead, it leaves §2244(b)(1)'s generally applicable language in place. All of

——————

[5] Section 2244(b)(2)(B)'s new-facts provision requires that

"(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

"(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

In contrast, §2255(h)(1)'s new-facts provision requires

"newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."

which suggests that §2244(b)(1) applies no less to federal prisoners than to state prisoners—just as the text says.[6]

Another contextual clue comes from the 30-day clock. Just as with §2244(b)(3)(C), no one questions that §2244(b)(3)(D) applies to both federal and state prisoners. Under that provision, a federal court of appeals has just 30 days to issue a certification decision. Complying with that tight deadline is possible if courts of appeals can dispose of do-over claims without further inquiry. But complying is a good deal harder if panels must ask whether each and every proposed collateral attack involves new evidence of innocence or a retroactively applicable rule of constitutional law. In this case, for example, it took me five minutes to appreciate that Mr. Bowe has already advanced, many times before, the same claim he proposes to pursue here. I do not know, nor would it be so easy to determine, whether Mr. Bowe's latest filing makes a compelling showing of new facts or new law. Contra, *ante,* at 23 (majority erroneously suggesting that determining whether a litigant "has raised a claim before" is no easier than determining whether he has identified compelling new facts or law).

Statutory structure and history, too, have something to say. Before AEDPA, separate provisions addressed do-over claims by state prisoners and federal prisoners. Back then, §2244 permitted (but did not require) a court to deny relief to a state prisoner who "present[ed] no new ground not heretofore presented and determined" in a prior

---

[6]The majority claims my understanding of how §2244(b)(2) and §2255(h) interact renders §2255(h)(2) "mere surplusage." *Ante,* at 22–23. But that claim is easily falsified. If §2255(h)(2) really were "mere surplusage," then it could be struck out of the statute with no change. So, then, imagine a version of §2255(h) without subsection (h)(2). That imaginary provision would require *every* "second or successive motion . . . to contain . . . newly discovered evidence" capable of satisfying subsection (h)(1)'s new-facts requirement. That is very different from the real §2255(h), which allows a prisoner to show *either* new facts, §2255(h)(1), *or* new law, §2255(h)(2).

application. 28 U. S. C. §2244(a) (1988 ed.); 62 Stat. 965–966. Similarly, §2255 said that a court "shall not be required to entertain a second or successive motion for similar relief" by a federal prisoner. See 28 U. S. C. §2255 (1988 ed.). In AEDPA, Congress amended both provisions. Now, §2255(h) channels second or successive §2255 motions through the §2244 rules applicable to state prisoners. And AEDPA added to §2244 a new mandatory (no longer permissive) bar against do-over claims, flatly directing that they "shall be dismissed." §2244(b)(1); 110 Stat. 1220–1221.

Exactly nothing in this history or AEDPA's structure suggests Congress sought to loosen do-over restrictions for anyone—let alone completely do away with those restrictions for federal prisoners. To the contrary, the statute's history and structure suggest, as we have long observed, that AEDPA imposed new and "strict[er] limit[s]" on postconviction relief. *Jones*, 599 U. S., at 476. All of which indicates, once again, that Congress meant what it said in §2244(b)(3)(C): The "requirements of this subsection" apply to federal and state prisoners alike—and those requirements include subsection (b)(1)'s bar on do-over claims.

## B

Seeking some way to justify a rule prohibiting state prisoners from pursuing do-over claims—but also allowing federal prisoners to do just that—Mr. Bowe and the majority offer a grab bag of unpersuasive theories.

First, the majority observes that §2244(a) specifically references "section 2255," the provision governing federal prisoners' collateral attacks, while §2244(b)(1) contains no such reference. Because "we presume differences in language . . . convey differences in meaning," the majority submits, it must follow that §2244(b)(1)'s bar on do-over claims "applies only to state prisoners." *Ante*, at 20 (internal quotation marks omitted). But that cannot be right.

Section 2244 mentions "section 2255" only one time, in §2244(a). If its absence elsewhere mattered, then none of the rules in §§2244(b)(3)(A) through (D) would apply to federal prisoners. Yet not even the majority or Mr. Bowe thinks that. To the contrary, both concede that the whole point of §2255(h)'s cross-reference to §2244 is to ensure federal prisoners, just like their state counterparts, must follow each of those provisions. *Ante,* at 12–13; Brief for Petitioner 32.

Second, and in a similar vein, Mr. Bowe stresses that subsection (b)(1) prohibits do-over claims "in a second or successive habeas corpus *application under section 2254.*" (Emphasis added.) Seeking to capitalize on the italicized language, Mr. Bowe notes that §2254 governs postconviction "applications" by state prisoners, while federal prisoners proceed by way of §2255 "motions." Given that difference in nomenclature, Mr. Bowe contends, subsection (b)(1) must apply only to state prisoners because that provision addresses "applications" and not "motions." The majority briefly nods in the same direction. See *ante,* at 20.

This argument fails for much the same reason as its predecessor. If the absence of the word "motion" in §2244 made all the difference, then none of §§2244(b)(3)(A) through (D)'s rules would apply to federal prisoners because each of those provisions speaks only of "applications." Yet, no one believes that. Instead, everyone appreciates, §2255 routes federal prisoners' "motions" through all those provisions. In each, then, the word "applications" is best read as interchangeable with "motions," just as most circuits have understood. Cf. *Magwood* v. *Patterson*, 561 U. S. 320, 324, n. 1 (2010) ("Although 28 U. S. C. §2244(b) refers to a habeas 'application,' we use the word 'petition' interchangeably").

Third, Mr. Bowe replies that there's something else special about subsection (b)(1). Unlike §§2244(b)(3)(A) through (D), he says, subsection (b)(1) doesn't just speak of "applications," but "application[s] *under section 2254.*"

(Emphasis added.) And that more specific reference, Mr. Bowe insists, means subsection (b)(1) cannot apply to federal prisoners proceeding under §2255. But this argument doesn't move the needle either. If (as it must be and as no one seriously disputes) the term "application" in §2244 is best read as embracing a federal §2255 "motion," then the phrase "application under section 2254" in §2244 should likewise be understood to embrace a "motion under section 2255."[7]

Fourth, the majority suggests that §2255(h)'s cross-reference to §2244 captures only the latter's "procedures" governing "how a panel certifies a second or successive filing." *Ante,* at 21. And, the argument goes, §2244(b)(1)'s bar on do-over claims is no mere "procedure" but instead a substantive rule about what a filing may "contai[n]." *Ibid.* This theory fails too. Section 2255's cross-reference does not speak of a procedure/substance distinction. Instead, §2255(h) directs courts to "certif[y]" motions "as provided in" §2244. Even the majority acknowledges that this language makes §2244(b)(3)(C) applicable to federal prisoners. *Ante*, at 12–13. And subparagraph (C) explicitly says "the requirements of this subsection"—which include §2244(b)(1)—must be satisfied before certification. It's more than a little telling that the majority finds itself forced

---

[7] That is not to say that subsection (b)(1)'s specific reference to §2254 applications, rather than to applications *simpliciter*, is superfluous. It has considerable work to do—just not the work Mr. Bowe supposes. By referencing §2254, the statute makes plain that the do-over bar applies only to applications (or motions, as the case may be) by prisoners seeking postconviction relief. That renders it inapplicable to habeas applications from state prisoners in preconviction executive detention, because those applications are filed under §2241 rather than §2254. And that distinction (unlike the one Mr. Bowe proposes between state and federal prisoners) makes sense. Convicted prisoners, by definition, have already received a great deal of judicial process, so a do-over bar makes sense as to them. Prisoners who haven't been convicted, meanwhile, stand in very different shoes, so Congress decided to exempt them.

both to rewrite §2255(h)'s terms and to ignore §2244(b)(3)(C)'s directions.

Finally, Mr. Bowe retreats to the position that federal prisoners *must* be exempt from subsection (b)(1) because AEDPA was designed to treat state prisoners more harshly than federal prisoners. But, in fact, AEDPA often treats the two groups the same, and not just when it comes to second or successive filings. To take just one example, §2253(c) requires a prisoner to secure a "certificate of appealability" before appealing from a habeas *or* §2255 loss in federal district court. State and federal prisoners alike thus must satisfy that provision's demands. See §2253(c); cf. §2266(a) (requiring identical treatment for certain state- and federal-prisoner filings). And it should shock no one that Congress might proceed similarly here and exhibit an intolerance for do-over claims no matter who seeks to pursue them.[8]

*

The majority today commits two serious mistakes. First, in its zeal to resolve a circuit split, the majority asserts jurisdiction where we have none. With statutory text and 30 years of case law in this Court and lower courts aligned

---

[8] The government offers two additional theories for Mr. Bowe on the merits. But the majority pursues neither theory, and rightly so. For one, the government appears to suggest that subsection (b)(1) *never* applies during a court of appeals' certification proceeding for *any* prisoner—state or federal. Only after certification, on this view, may a district court weed out do-over claims under subsection (b)(1). See Brief for United States 44–45. But, among other defects, the government's view would imply that not only (b)(1) but also (b)(2) is inapplicable during certification. And, of course, that would render the whole certification process pointless. For another, the government suggests that, even if §2244(b)(1)'s do-over bar applies to federal prisoners, that rule does not apply in this particular case because Mr. Bowe never actually filed a previous collateral attack containing a *Davis* claim; he only sought leave to do so. Reply Brief 10–11. But we did not take this case to address that case-specific argument, nor did Mr. Bowe himself clearly advance it before us.

against it, the majority bases its claim of jurisdiction on a new and curiously contoured clear-statement rule that is as needless as it is unprecedented. Second, and compounding its jurisdictional overreach, the majority adopts an implausible view on the merits. AEDPA didn't suddenly free federal prisoners from pre-existing restrictions on do-over claims. Just the opposite: It imposed additional "carefully crafted limits" on collateral attacks by federal and state prisoners alike. *Jones*, 599 U. S., at 482. And, quite unsurprisingly, one of those limits includes an unmistakable and absolute bar on do-over claims. Because neither of the majority's innovations are compatible with Congress's directions in AEDPA, I respectfully dissent.